639 A.2d 670

Craig Douglas RETTIG,

v.

STATE of Maryland.

No. 105, Sept. Term, 1992.

Court of Appeals of Maryland.

April 13, 1994.

**420**

W. Burton Anderson, Asst. Public Defender, (Stephen E. Harris, Public Defender, on brief), Snow Hill, for petitioner.

Mary O'Malley Lunden, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore,) on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE RODOWSKY McAULIFFE * CHASANOW KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The petitioner, Craig Douglas Rettig, was convicted of driving a vehicle while intoxicated in violation of Maryland Code (1977, 1992 Repl.Vol., 1993 Cum.Supp.), § 21–902(a) of the Transportation Article.[1]   The sole issue before us is

---

\* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court;  after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1.  § 21–902 reads in relevant part as follows:

whether § 21–902 applies when the intoxicated driving occurs on private property not open to the general public, namely the defendant's own backyard.

At approximately 2:45 a.m. on January 31, 1992, Mr. Rettig was driving his three wheel, all-terrain motor vehicle around the backyard of his home in West Ocean City, Maryland, when he lost control of the vehicle and injured his arm. When Maryland State Police Trooper McQueeney arrived at the scene of the accident one-half hour later, he observed that Rettig had "bloodshot, glassy eyes and a strong odor of alcoholic beverage on his breath." Trooper McQueeney accompanied Rettig to the hospital, where he issued a field sobriety test and then arrested him. At that point, Rettig volunteered that he was "toasted" but maintained that he had the right to operate his all-terrain vehicle while intoxicated on his own property.

On April 24, 1992, Rettig was convicted in the District Court of Maryland of driving while intoxicated in violation of § 21–902(a) of the Transportation Article. He appealed to the Circuit Court for Worcester County, pleading not guilty and waiving his right to a jury trial. At the trial de novo in the circuit court, Rettig defended on the ground that, although he had been intoxicated at the time of the accident, he could not be convicted under § 21–902(a) since that provision reached only driving conducted on public property and on private property used by the public generally, but did not reach purely private property such as Rettig's backyard. The circuit court rejected Rettig's defense, finding that, although the driving occurred on Rettig's own property, Maryland's drunk driving provision "applie[d] throughout the State, ... whether on private or public property." The circuit court convicted Rettig of driving while intoxicated, fined him $200, and as-

---

"**§ 21–902. Driving while intoxicated, under the influence of alcohol, or under the influence of a drug, a combination of alcohol and a drug, or a controlled dangerous substance.**

(a) *Driving while intoxicated.*—A person may not drive or attempt to drive any vehicle while intoxicated."

sessed $126 in court costs. Rettig filed in this Court a petition for a writ of certiorari, presenting a single question as follows:

"Is it a violation of [Transportation Article] 21–902 to drive a vehicle while intoxicated on private property which is not used by the public?"

We granted the petition and shall answer the question in the affirmative. 328 Md. 741, 616 A.2d 904.

Maryland's prohibition on driving while intoxicated, § 21–902(a) of the Transportation Article, is contained within Title 21, entitled "Vehicle Laws—Rules of the Road." Section 21–101.1 defines the general scope of Title 21 as follows:

"(a) *In general.*—The provisions of this title relating to the driving of vehicles refer only to the driving of vehicles on highways, except:

(1) As provided in subsection (b) of this section; and

(2) Where a different or additional place specifically is provided for.

(b) *Applicability to private property.*—(1) A person may not drive a motor vehicle in violation of any provision of this title on any private property that is used by the public in general.

(2) A person may not drive a motor vehicle in violation of any provision of this title on any property that is owned by or under the control of this State or any of its political subdivisions, county boards of education, or community colleges and that is open to vehicular traffic and used by the public in general.

(3) Any person who violates any provision of this subsection is in violation of the law to the same extent and is subject to the same penalty as if the motor vehicle were driven on a highway."

In addition, subtitle 9 of Title 21, which includes § 21–902, has a separate scope provision which states:

"**§ 21–901 Scope of subtitle.**

"The provisions of this subtitle apply throughout this State, whether on or off a highway."

■ The petitioner Rettig primarily argues that, by construing § 21–901 in light of § 21–101.1, the § 21–902(a) prohibition on intoxicated driving extends only to highways and to private or public property open to the public generally, but not to other private property. Rettig relies on the fact that the only areas specifically set forth in § 21–101.1 are highways and property used by the public in general. He states that the general language of § 21–901, *i.e.,* "throughout this State, whether on or off a highway," should be read to mean highways and property used by the public in general.[2]

The petitioner's argument, however, ignores the broad expansion which the Legislature included in § 21–101.1(a)(2). Thus, while § 21–101.1 itself expressly covers highways and property used by the public in general, subpart (a)(2) of that section also states that "a different or additional place" may be provided for elsewhere in the Title. Consistent with § 21–101.1(a)(2), such an additional place was provided for in § 21–901. There, the Legislature declared that the provisions of subtitle 9 "apply throughout this State, whether on or off a highway."

■ When interpreting a statute, we assume that the words used have their ordinary and natural meaning. *Atkinson v. State,* 331 Md. 199, 215, 627 A.2d 1019, 1027 (1993); *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483, 485–486 (1992); *Privette v. State,* 320 Md. 738, 744–745, 580 A.2d 188, 191 (1990). The ordinary meaning of the word "throughout" is "in or to every part." *Websters' Third New International Dictionary* 2385 (1981). We believe that, by the broad language of § 21–901, the General Assembly intended § 21–902 to apply to land anywhere within the State of Maryland,

---

**2.** At oral argument, the petitioner presented an even narrower interpretation of § 21–101.1 than he did in his brief, arguing that by (a)(1) and (2), the Legislature intended to establish two necessary conditions for the private property exception to apply. Under this reading, the private property in question would have to be both of the type described in subsection (b) and then be separately specified in each provision. The language of § 21–101.1 clearly cannot support this unwieldy interpretation.

whether on a public highway, on other public land open to vehicular traffic and used by the public in general, in a parking lot, on a private road or driveway, or indeed on any land surface including a backyard. *See Locklear v. State,* 94 Md.App. 39, 46 n. 2, 614 A.2d 1338, 1341 n. 2 (1992) ("§ 21–901 means precisely what it says," and thus one driving while intoxicated on a "dirt mound" on private property is guilty under § 21–902).[3] We decline to read a "used by the public" limitation into § 21–901 when nothing in the broadly-worded language of §§ 21–101.1(a)(2) or 21–901 suggests that the Legislature intended to make the application of § 21–902 depend upon the nature of the land involved.

The history of §§ 21–101.1 and 21–901 further supports the conclusion that the Legislature did not intend to limit the application of § 21–902 solely to highways and property used by the public in general. Prior to 1977, this State's vehicle laws were contained in Code (1957, 1970 Repl.Vol., 1975 Cum.Supp.), Art. 66½. The "rules of the road" were located in subtitle 11, which began with the consolidated scope provision that would eventually become §§ 21–101.1 and 21–901. This scope provision, § 11–101, read as follows (emphasis added):

"**§ 11–101. Provisions of subtitle refer to vehicles upon the highways; exceptions.**

The provisions of this subtitle relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except:

(1) Where a different place is specifically referred to in a given section; and

---

3. At other places in Title 21, the General Assembly has specified narrower categories of property than those generally described in § 21–101.1. *See, e.g.,* § 21–903 ("A person may not consume an alcoholic beverage while driving a motor vehicle on a highway"); § 21–1201 ("With the exceptions stated in [subtitle 12]," the provisions of the subtitle relating to the operation of bicycles apply "whenever a bicycle is operated on any highway or on any path set aside for the exclusive use of bicycles").

(2) *The provisions of Part IX of this subtitle and Subtitle 10 shall apply upon highways and elsewhere throughout the State.*

(3) Except in Garrett and Somerset counties, any person operating a motor vehicle on private property which is used by the public in general in violation of the provisions of this subtitle shall be deemed in violation of the law to the same extent as if the motor vehicle were being operated on a public highway and the violation carries the same penalty.

(4) Any person operating a motor vehicle on property owned, under control of the State or its political subdivisions, the county boards of education, or the community colleges, open to vehicular traffic and used by the public in general, in violation of the provisions of this subtitle shall be deemed in violation of the law to the same extent as if the motor vehicle were being operated on a public highway, and the violation carries the same penalty."

Part IX, referred to in § 11–101 as applying "upon highways and elsewhere throughout the State," included the prohibition on intoxicated driving:

"§ 11–902. Driving while intoxicated....

(a) It shall be unlawful for any person to drive or attempt to drive or to be in actual physical control of any vehicle within this State while he is in an intoxicated condition."

The language of former § 11–101 reveals the clear legislative intent to prohibit the intoxicated driving of a vehicle regardless of the nature of the land on which it takes place. The phrase "elsewhere throughout the State" could hardly mean anything less. *See* 59 Op.Atty.Gen. 659, 665 (1974). Moreover, language identical to former § 11–101 in the vehicle codes of other jurisdictions has been held to encompass any land area. *See Dayhoff v. State*, 42 Colo.App. 91, 93, 595 P.2d 1051, 1053 (1979), *aff'd*, 199 Colo. 363, 609 P.2d 119 (1980) (private parking lot); *State v. Hollobaugh*, 297 A.2d 395 (Del.Super.Ct.1972) (grocery store parking lot); *People v. Guynn*, 33 Ill.App.3d 736, 338 N.E.2d 239 (1975) (private property not used by the public generally); *State v. Carroll*,

225 Minn. 384, 31 N.W.2d 44 (1948) (private roadway at a summer resort); State v. Budden, 226 Kan. 150, 595 P.2d 1138 (1979) (parking lot of a tavern); State v. Novak, 338 N.W.2d 637 (N.D.1983) (private field); Annotation, *Applicability, to Operation of Motor Vehicle on Private Property, of Legislation Making Drunken Driving A Criminal Offense*, 29 A.L.R.3d 938, 949–951 (1970, 1993 Supp.).

In 1977, the Legislature recodified Maryland's vehicle laws by repealing Art. 66½ in its entirety and enacting Code (1977), §§ 11–101 through 27–105 of the Transportation Article in its place. *See* Ch. 14 of the Acts of 1977. Former § 11–101 was broken down into separate provisions as part of the 1977 recodification. The bulk of former § 11–101 became new § 21–101.1, which governs the scope of Title 21 generally. *See* Revisor's Note to § 21–101.1, Ch. 14 of the Acts of 1977, at 991 ("This section presently appears as Art. 66½, § 11–101"). Former subsection 11–101(2) was deleted from § 21–101.1's general scope provision, was added with changes in wording but without substantive change as § 21–901 of the Transportation Article, and was placed directly within the new subtitle 9. *See* Revisor's Note to § 21–101.1, Ch. 14 of the Acts of 1977, at 991 ("Present § 11–101(2), which relates to exceptions for ... Subtitle 9 of this title, [is] deleted as unnecessary in light of ... [§] 21–901 to the same effect"); Revisor's Note to § 21–901, Ch. 14 of the Acts of 1977, at 1045 ("This section, which is an exception to the general rule established in § 21–101.1 of this title, is new language derived without substantive change from Art. 66½, § 11–101(2)"). As the Revisor's Notes make clear, new § 21–901 was intended to carry the same force as former § 11–101(2). *See Motor Vehicle Admin. v. Seidel*, 326 Md. 237, 252–253, 604 A.2d 473, 481 (1992) (Revisor's Note, stating that the revision constituted "new language derived without substantive change," showed that the new sections did not alter the original legislative intent); *Rentals Unlimited v. Administrator*, 286 Md. 104, 109–110, 405 A.2d 744, 748 (1979); *Collier v. Connolley*, 285 Md. 123, 130–131, 400 A.2d 1107, 1110–1111 (1979). *See also Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 100, 453 A.2d 1191,

1197 (1982) ("A change in the phraseology of a statute as part of a recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable"); *Bureau of Mines v. George's Creek*, 272 Md. 143, 155, 321 A.2d 748, 754–755 (1974). Like its predecessor provision, § 21–901 continues to mean that intoxicated driving of a vehicle under § 21–902(a) is an offense regardless of the nature of the land on which it is committed.

This interpretation of §§ 21–101.1 and 21–901 is certainly not unreasonable or illogical. We have recognized previously that Maryland's drunk driving provisions generally were enacted for the protection of the public. *See Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 464, 597 A.2d 939, 943–944 (1991); *State v. Werkheiser*, 299 Md. 529, 537, 474 A.2d 898, 902 (1984); *State v. Moon*, 291 Md. 463, 477, 436 A.2d 420, 427 (1981). The menace posed by an impaired driver on purely private property is sometimes no different from that posed by one who ventures onto property open to the public generally. *See State v. Magner*, 151 N.J.Super. 451, 454, 376 A.2d 1333, 1334 (1977) ("Operation of a motor vehicle while under the influence of intoxicating liquor holds no less threat of extraordinary danger of injury to the driver and others or damage to property because that particular folly is performed in a private place"). *See also People v. Gwynn*, *supra*, 33 Ill.App.3d at 739, 338 N.E.2d at 241; *State v. Novak*, *supra*, 338 N.W.2d at 639.

Furthermore, there is never a guarantee that a vehicle driven by someone in an impaired condition will remain off the roadways for long. *See State v. Carroll*, *supra*, 225 Minn. at 386–387, 31 N.W.2d at 46 ("no one can say when [an intoxicated person], while in a confused or befuddled state of mind as a result of his or her condition, will leave the private road and pursue a mad, zigzagging course down a public highway or street, with the resulting damage and horrors so frequently reported").

Both courts below correctly held that petitioner's driving a vehicle in his backyard while intoxicated constituted a violation of § 21–902(a).

*JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.*